IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| **VIRGIL ROY RUSSELL,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:19-cv-00057-O-BP |
| § | |
| **ANDREW M. SAUL,** § | |
| **Commissioner of Social Security,** § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Virgil Roy Russell ("Russell") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and Supplemental Security Income ("SSI") payments under Title XVI. ECF Nos. 1 and 15. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

**I.      STATEMENT OF THE CASE**

Russell was born on September 3, 1968, has at least a high school education, and can communicate in English. *See* SSA Admin. R. (hereinafter, "Tr.") 23, ECF No. 12-1. His employment history includes work as a truck driver, dispatcher, water truck driver, material handler, and cement supervisor. *Id.* Russell filed applications for a period of disability, DIB, and SSI on November 28, 2016. Tr. 11. In all applications, he alleged that his disability began on July 30, 2015. *Id.* The claim was denied initially and upon reconsideration. *Id.* Russell requested a

hearing, which was held before Administrative Law Judge ("ALJ") Sylke Merchan on May 22, 2018 via video, with Russell in Wichita Falls, Texas, and the ALJ in Oklahoma City, Oklahoma. *Id.* A vocational expert ("VE") also appeared at the hearing. *Id.* The ALJ issued her decision on August 23, 2018, finding that Russell was not disabled. Tr. 25.

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Russell had not engaged in substantial gainful activity since November 22, 2015, the alleged onset date. Tr. 13. At step two, she determined that Russell had severe impairments of obesity, status post quadruple cardiac artery graft bypass, coronary artery disease, rheumatoid arthritis, depression, anxiety, and chronic obstructive pulmonary disease ("COPD"). *Id.* At step three, the ALJ found that Russell's impairments did not meet or equal in combination one of the impairments listed in 20 C.F.R. pt. 404(p). Tr. 14.

At step four, the ALJ ruled that Russell had the residual functional capacity ("RFC") to perform light work with the following abilities and limitations: no climbing ladders, ropes, or scaffolds; no more than occasionally climbing ramps or stairs, balancing, stooping, crouching, crawling, or kneeling; simple, repetitive, routine tasks, with no strict production requirements; no more than occasional changes in work setting; and no public contact and no more than occasional contact with coworkers and supervisors. Tr. 17. The ALJ concluded that Russell was unable to perform his past relevant work. Tr. 23. At step five, she found that considering Russell's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he could perform. *Id.*

The Appeals Council denied review on April 12, 2019. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v.*

*Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.     STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's RFC, which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

This Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

Russell raises two issues on appeal. He claims that the ALJ failed to (1) include any limitations resulting from his COPD impairment in the RFC finding and (2) provide good cause for discounting the treating physician's opinion that he would be unable to focus on a job. ECF No. 15 at 12-22.

**A.    The ALJ properly accounted for any limitations resulting from Russell's COPD, and substantial evidence supports the ALJ's RFC determination.**

Russell argues that the ALJ erred by failing to include the limitations resulting from his COPD, an impairment found to be severe at step two, in the RFC finding. *Id.* at 12. Additionally, he contends that because the state agency medical consultants did not assess any limitations due to his COPD, let alone find that his COPD constituted a medically determinable impairment, the ALJ erred by relying upon her own interpretation of the medical records for determining the effect of his COPD upon the RFC. *Id.* at 14-15. Further, Russell argues that the ALJ did not provide the basis for finding that his COPD had no effect on his RFC even though it caused significant limitations. *Id.* at 15.

The Commissioner responds that the ALJ thoroughly considered the medical records relevant to Russell's alleged limitations from COPD in determining the RFC. ECF No. 16 at 5-6. Further, the Commissioner asserts that the ALJ noted that the RFC assessment included different limitations than those suggested by the state agency consultants to account for evidence received at the administrative hearing and medical evidence dated after the date of the state agency consultants' opinions. *Id.* The Commissioner also argues that substantial evidence supported the ALJ's finding as she carefully examined the record and had the sole responsibility for determining Russell's RFC. *Id.* at 5.

Federal courts in Texas have held that when an ALJ fails to address a claimant's impairments identified as severe at step two when determining the claimant's RFC, the RFC in effect contradicts the step two finding. *See Walker v. Colvin*, No. 3:14-CV-1498-L, 2015 WL 5836263, at *15 (N.D. Tex. Sept. 30, 2015); *Spears v. Barnhart*, 284 F. Supp. 2d 477, 483 (S.D. Tex. 2002) (by failing to include any limitations, the ALJ "basically contradict[ed] the fact that he found [the claimant's] impairments to be severe"); *Norman v. Astrue*, No. SA-10-CA-849-XR, 2011 WL 2884894, at *6 (W.D. Tex. July 18, 2011) ("Similar to *Spears*, here the ALJ did not include any limitations resulting from the [impairment], contradicting his own finding that the [impairment] was 'severe.'"). Nevertheless, "having a severe impairment is not a sufficient condition for receiving benefits under the Secretary's regulations," but "means only that claimant has passed the second step of the inquiry mandated by the regulations." *Shipley v. Sec. of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir.1987). Thus, the consideration of whether a claimant's impairments are severe at step two is a different inquiry from an ALJ's assessment of the claimant's RFC. *See Gutierrez v. Barnhart*, No. 04–11025, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) ("A claimant is not entitled to social security disability benefits merely upon a showing that [he] has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits."); *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) ("The ALJ's finding that [the claimant] had a 'combination of impairments that is severe' did not foreclose a finding that [the claimant] had a [RFC] to perform a range of light work, and is not necessarily inconsistent with that finding."); *Quigley v. Astrue*, No. 4:09–CV–402–A, 2010 WL 5557500, at *8 (N.D. Tex. Sept 8, 2010).

In making the RFC determination, the ALJ discussed Russell's reports of COPD. Tr. 18-21. Specifically, she noted that Russell testified at the hearing that he struggles with COPD and

that he reported a history of COPD during a medical consultative examination with Frank Hannallah, M.D. Tr. 18, 19. Although the ALJ was aware of and specifically discussed Russell's COPD, she found that Russell's allegations were "not entirely consistent with the longitudinal and objective medical evidence of record." Tr. 22. The evidence of record showed that Russell had clear and normal lung sounds, unlabored breath, and no wheezing with respiration. Tr. 20-21. Additionally, no examining or consulting physician has opined that Russell's COPD would impact his ability to perform work-related activities beyond the limitations the ALJ noted in the RFC finding.

This analysis shows that the ALJ properly considered Russell's COPD in determining the RFC. Further, because substantial evidence supports the ALJ's RFC determination, any error by the ALJ in failing to explain why she did not include limitations specific to COPD in the RFC determination is harmless. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir.2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights); *Ball v. Astrue*, No. 1:06–CV–138–BI, 2008 WL 836418, at *17 (N.D. Tex. Mar. 26, 2008) (ALJ did not err in finding at step two that claimant's wrist fracture was severe and then not incorporating some specific limitations regarding claimant's wrist fracture into RFC determination). Accordingly, reversal on this basis is not required.

Moreover, the record does not support Russell's argument that the ALJ improperly relied on her own interpretation of the medical records for determining the effect of Russell's COPD upon the RFC. Russell is correct that an ALJ may not take on the physician's role and draw conclusions from the medical data without relying on a medical expert's help. *Montoya v. Berryhill*, No. 3:16-cv-1594-D-BN, 2017 WL 3835950, at *4 (N.D. Tex. Aug. 1, 2017), rec. adopted, No. 3:16-CV-1594-D, 2017 WL 3834753 (N.D. Tex. Aug. 31, 2017). However, there is

7

no evidence that the ALJ did so in this case. The medical record here contains sufficient medical providers' interpretations of the raw medical data from which the ALJ could determine Russell's RFC. Further, as noted above, in determining his RFC, the ALJ considered medical assessments of Russell's pulmonary conditions along with statements made by Russell, his physicians, and his examiners describing the limits on his ability to do work. Therefore, the ALJ did not overstep her bounds to reach a medical conclusion, and reversal is not required on this issue.

**B.     The ALJ gave proper weight to the treating physician's opinions.**

Russell alleges that the ALJ erred by not providing good cause for discounting treating physician Robin Chirackal, M.D.'s opinion that Russell would be unable to focus on a job. ECF No. 15 at 18. Russell argues that the ALJ failed to recognize that Dr. Chirackal's opinion was not based on his physical condition or pain level, but on his depression. Russell contends that without evaluation of the effect of his depression, the ALJ's focus on a lack of physical examination findings and his pain level does not provide good cause for discrediting Dr. Chirackal's opinion. *Id.* Further, Russell alleges that the ALJ failed to explain how Dr. Chirackal's opinion was inconsistent with Russell's reports that he could engage in daily activities on a limited basis. Because he can only perform activities on a limited basis, Russell argues, his report of performing these activities does not contradict Dr. Chirackal's opinion concerning his ability to focus on a job. *Id.* at 21-22.

The Commissioner responds that the ALJ specifically considered Dr. Chirackal's opinion and assigned it "little weight" because she found Dr. Chirackal's opinion was inconsistent with the treating notes. ECF No. 16 at 6-7. The Commissioner also observes that the ALJ found Dr. Chirackal's proposed limitations were inconsistent with the activities Russell reported that he could do. *Id.* at 7. Further, the Commissioner argues that the ALJ noted that Dr. Chirackal's

8

opinion was somewhat internally inconsistent because Dr. Chirackal opined that Russell seldom experienced pain great enough to interfere with his ability to concentrate, but also stated that Russell would have difficulty focusing on his job. *Id.* Additionally, the Commissioner contends that Russell's argument that the ALJ failed to recognize Dr. Chirackal's opinion regarding Russell's inability to focus on his job was based on Russell's depression rather than any physical impairment relies on an assumption by Russell. *Id.* at 8. The Commissioner asserts that Dr. Chirackal's opinion discussed limitations resulting from both physical and mental impairments and that there is no indication that Dr. Chirackal's opinion was based on depression. *Id.*

In his Reply, Russell argues that Dr. Chirackal related Russell's inability to focus on a job to his depression and not to a physical impairment or pain because Dr. Chirackal identified depression as Russell's primary clinical finding or objective sign. ECF No. 17 at 4. Russell also contends that Dr. Chirackal's note that Russell's arthritis was "currently under evaluation" demonstrates it was not the basis for his assessment of Russell's ability to focus on the job. *Id.*

The ALJ should give the opinion of a treating physician controlling weight if (1) medically acceptable clinical and laboratory diagnostic techniques support the opinion and (2) the opinion is not inconsistent with other substantial evidence in the record. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); 20 C.F.R. § 404.1527(c)(2). However, the Fifth Circuit has held that "when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony[,]" with recognized good cause exceptions including "statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Accordingly, an "ALJ is free to reject

9

the opinion of any physician when the evidence supports a contrary conclusion." *Martinez*, 64 F.3d at 176.

Here, the ALJ carefully considered the various opinions of Dr. Chirackal and concluded that the inconsistent nature of the opinions weighed against the treatment notes, activities Russell reported he could do, and Dr. Chirackal's own statements, rendered Dr. Chirackal's opinions of little value. Specifically, the ALJ noted the inconsistency between Dr. Chirackal's opinion that Russell could only sit for two hours and stand or walk for less than two hours in an eight-hour workday, occasionally lift less than ten pounds, and have difficulty focusing on a job, and the treatment notes that are generally unremarkable regarding his gait, heart rate and rhythm, breath sounds, and straight leg raise tests. Tr. 22. Additionally, the ALJ found that Dr. Chirackal's proposed limitations were inconsistent with the activities Russell reported he could do, including washing dishes, doing laundry, doing household repairs, mowing grass with a riding mower, and being able to pass a medical exam for his Commercial Driver's License. *Id.* Further, the ALJ noted that Dr. Chirackal's opinion that Russell seldom experienced pain severe enough to interfere with his ability to concentrate was inconsistent with his own statement that Russell would have difficulty focusing on a job. *Id.* Accordingly, the ALJ demonstrated good cause for giving little weight to Dr. Chirackal's opinions, and substantial evidence supported her analysis.

To the extent that Russell argues that Dr. Chirackal's opinion regarding his inability to focus on a job was based on his depression and not his physical condition or pain level, this contention is without merit. As the Commissioner correctly notes, there is no indication that Dr. Chirackal based his opinion solely on Russell's depression. Further, the record does not support Russell's argument that Dr. Chirackal identified depression as his primary clinical finding or objective sign. Although Dr. Chirackal noted that Russell has episodic spurts of depression varying

in nature, that he takes antidepressants for major depression, and that his ability to concentrate at work appears to be inapposite, these notations do not indicate Dr. Chirackal related Russell's inability to focus on a job to depression and not to a physical impairment or pain. Instead, Dr. Chirackal's treatment notes demonstrate that he considered limitations resulting from both physical and mental impairments in determining Russell's inability to focus, as evidenced by the question in the report that asks how often Russell's experience of pain or other symptoms is severe enough to interfere with attention and concentration, to which Dr. Chirackal answered, "Seldom." Tr. 800.

Russell's argument that the activities that he reported he could perform do not contradict Dr. Chirackal's opinion on his inability to focus on a job because he is only able to perform them on a limited basis is also without merit. Other than the contention that he can only do daily activities when he "feels good" or by "tak[ing] several breaks" when it comes to washing dishes, Russell does not point to anything else in the record that would contradict the ALJ's finding that he can perform the daily activities he reported he could do. This is not enough to refute that he is in fact able to engage in the activities the ALJ identified. Therefore, the ALJ properly found that Dr. Chirackal's proposed limitations were inconsistent with the activities Russell reported that he could do. Accordingly, reversal is not appropriate on this basis.

### IV.    CONCLUSION

The ALJ properly considered the medical records relevant to Russell's alleged limitations from COPD in determining his RFC. Further, the ALJ did not rely on her own interpretation of the medical records, but properly evaluated medical assessments of Russell's pulmonary conditions in determining the effect of Russell's COPD upon his RFC. The ALJ also demonstrated good cause for giving little weight to Dr. Chirackal's opinions. In doing so, the ALJ applied the correct legal

standards, and substantial evidence supports her decision. For these reasons, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed on July 24, 2020.

*Hal R. Ray, Jr.*
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE